# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EMMETT G. DANIELS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-118-FHS-KEW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Emmett G. Daniels, Jr. (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 21, 1956 and was 55 years old at the time of the ALJ's decision. Claimant completed a Bachelor of Science degree. Claimant has worked in the past as a probation and parole officer. Claimant alleges an inability to work beginning April 7, 2010 due to limitations resulting from anxiety, psoriasis, generalized osteoarthritis, and benign essential hypertension.

**Procedural History**

On April 29, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 14, 2011, a video administrative hearing was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick. On October 3, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on January 31, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of medium work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to fully and fairly develop the record; (2) reaching an improper RFC determination; and (3) making erroneous findings at step five.

**Duty to Develop the Record**

In his decision, the ALJ determined Claimant suffered from the severe impairments of hypertension and generalized osteoarthritis. (Tr. 21). He also found Claimant retained the RFC to perform a full range of medium work. (Tr. 23). The ALJ applied the Grids to conclude that Claimant was not disabled. (Tr. 28).

Claimant first contends the ALJ failed to adequately develop the record by failing to contact Claimant's treating physician or order a further consultative examination. Specifically, Claimant asserts the ALJ should have contacted Dr. Stephen Woodson, Claimant's treating physician to ascertain his level of physical limitations. Alternatively, Claimant asserts the ALJ should have sent him to a consultative examiner.

The record indicates Dr. Woodson treated Claimant in January of 2009 for back pain, joint pain, myalgias, and psoriasis. (Tr. 304). Dr. Woodson diagnosed Claimant with severe psoriasis, generalized osteoarthritis, and a prostate disorder. (Tr. 306). In March of 2010, Dr. Woodson found during an annual examination that Claimant suffered from generalized osteoarthritis, psoriasis, essential hypertension, benign, and bilateral carpal tunnel syndrome. (Tr. 309). He noted Claimant's range of motion was normal with diffuse degenerative changes noted. His hands were tender and he had a ganglion cyst on his right hand dorsal.

5

Claimant was positive for phalens and tinnells. Claimant was prescribed medication for these conditions. Id.

On April 7, 2010, Claimant reported to Dr. Woodson that his carpal tunnel was better with medication. Claimant was positive for back pain, joint stiffness, and limb pain. (Tr. 311). On April 15, 2010, Claimant was admitted to the hospital with high blood pressure, nausea, vomiting, and diarrhea. Dr. Woodson feared Claimant was suffering from the "DTs" because he had been drinking excessively. (Tr. 283-84).

On April 22, 2010, Claimant was positive for back pain and lateral hip pain. Dr. Woodson's diagnoses were the same as in prior visits. (Tr. 314-15). Although Claimant reported numbness and pain in his leg, by May 10, 2010, he reported no pain or discomfort or numbness. He was "100% better." (Tr. 319).

In June of 2010, Claimant again reported back pain and joint stiffness. Claimant had seen a chiropractor for treatment and reported improvement. (Tr. 395, 397). Dr. Woodson noted Claimant had weakness in his hands and he was placed on medication. (Tr. 375).

In September of 2011, Claimant had degenerative changes but reported "slightly less effusion and inflamation." Claimant was tender bilaterally in his wrists, hands, and low back "[t]o the

point, he cannot work, play golf, ride motorcycle." Poor grip was noted. (Tr. 417).

On September 8, 2011, Dr. Woodson completed a Physical Residual Functional Capacity Evaluation form on Claimant. He found Claimant could sit for one hour in an 8 hour workday, stand for one hour in an 8 hour workday, and walk for 3 hours in an 8 hour workday. He did not need assistive devices, needed regular breaks, and needed to alternate between sitting and standing at 15 minute intervals. Dr. Woodson opined Claimant could occasionally lift and carry up to 10 pounds. He found Claimant could rarely push/pull, occasionally work in an extended position, rarely grasp, and never finger or engage in fine manipulation. He also determined Claimant could rarely bend, crawl, stoop, or crouch and occasionally squat and kneel. (Tr. 419-20). Dr. Woodson also found Claimant could rarely balance, occasionally climb stairs, but never climb ladders, ramps, or scaffolds. He noted Claimant had marked restrictions in being near dangerous moving machinery, handling vibrating tools, being exposed to extremes in temperature or humidity, being exposed to respiratory irritants, and being exposed to high noise levels. (Tr. 421).

On December 14, 2011, Dr. Terry Hoyt also completed an RFC evaluation. He determined Claimant could sit and stand for one

7

hour each in an 8 hour workday and walk for 2 hours in an 8 hour workday. He also found Claimant needed to alternate between sitting and standing at less than 15 minute intervals. He estimated Claimant could occasionally lift up to 10 pounds but carry occasionally up to 5 pounds. Dr. Hoyt found Claimant was limited in the use of his lower extremities and needed to elevate them when seated. He determined Claimant could occasionally push/pull, work in extended position, work above shoulder level, work overhead, and reach. He could rarely grasp and finger/engage in fine manipulation. He could also rarely bend, squat, crawl, stoop, crouch, kneel, or balance. Dr. Hoyt found Claimant should never climb ladders, ramps, and scaffolds. He also determined Claimant should avoid all environmental restrictions except exposure to respiratory irritants. Dr. Hoyt's objective bases for his findings on limitations included degenerative joint changes, observation of his constant changes in position to find comfort, positive straight leg raising, chronic changes in his spinal exam, flat affect, and low energy. (Tr. 423-25).

In his decision, the ALJ did not find Dr. Woodson's opinion on limitations to be well-supported by medically acceptable clinical or laboratory diagnostic techniques. (Tr. 26-27). The ALJ found Claimant did not present to Dr. Woodson for over a year between

8

August 17, 2010 and September of 2011. Upon Claimant presented after the passage of a year, Dr. Woodson opined Claimant was disabled.

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

In his briefing, Claimant appears to argue that the ALJ

mistakenly requested a questionnaire to Dr. Beth Corley, inquiring about Claimant's mental treatment when he should have made further inquiry to Dr. Woodson concerning Claimant's level of limitation. Nothing in the record suggests the inquiry to Dr. Corley was a mistake since Claimant had listed her as a physician possibly possessing information concerning his condition. (Tr. 168). Moreover, Dr. Woodson provided an RFC statement. Nothing in the record suggests a further statement would have altered his opinion or added to the statement which he had previously provided. This Court finds no error in the failure to obtain an additional functional limitation statement from Dr. Woodson.

Claimant also suggests the ALJ should have ordered a further consultative examination to evaluate Claimant's level of functioning. The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination have been shown to exist in this case. Functional evaluations were performed in the case. Further examinations would likely have been cumulative. No error is found in the failure to obtain a further consultative examination.

### RFC Determination

Claimant contends the ALJ failed to properly assess his RFC in light of Dr. Woodson's and Dr. Hoyt's functional evaluations. The ALJ largely relies upon the findings a the non-examining agency physician's findings contained in the July 6, 2010 RFC functional assessment by Dr. Carmen Bird. Dr. Bird concluded Claimant could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, stand/walk for 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 363). Dr. Bird also found Claimant could play golf

11

weekly, perform yard work, does laundry, performs personal care without assistance, maintains his vehicles, and drives. (Tr. 364).

These findings are in direct contradiction to Dr. Woodson's evaluation. While the ALJ cites the boilerplate language for evaluating a treating physician's opinion in his decision, it appears little analysis of Dr. Woodson's actual findings on functional limitation occurred. The ALJ appears to have largely relied upon the time between visits to Dr. Woodson. This is certainly a consideration in evaluating the treating physician's opinion but not to the exclusion of the physician's objective medical findings. Moreover, while the ALJ did not have the benefit of Dr. Hoyt's opinion at the time of his decision, this Court cannot ignore the consistency of Dr. Hoyt's opinion with those of Dr. Woodson, considering the dearth of objective evidence in the medical file outside of Dr. Woodson's treatment records. Both Dr. Woodson's and Dr. Hoyt's findings contradict the ALJ's RFC findings that Claimant could perform medium work. On remand, the ALJ shall evaluate the treating physician's opinion in light of Dr. Hoyt's supporting findings under the requirements of <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).

### Step Five Findings

Claimant contends the ALJ should not have used the Grids to conclude he was not disabled. Since the case is remanded for a re-evaluation of Claimant's RFC, the ALJ shall also reconsider the application of the Grids at step five after analyzing the evidence supporting an RFC determination. The ALJ shall utilize the testimony of a vocational expert if required to ascertain Claimant's employment prospects at step five.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE